IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| LESLIE GRUSSING, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ORTHOPEDIC AND SPORTS MEDICINE, INC. )<br>a Missouri Corporation and )<br>COREY SOLMAN, JR., M.D., )<br>)<br>Defendants. ) | Cause No. 4:15-cv-01333-CAS |

## DEFENDANTS ORTHOPEDIC AND SPORTS MEDICINE, INC. AND COREY SOLMAN, JR., M.D.'S TRIAL BRIEF

Come now defendants, Orthopedic and Sports Medicine, Inc. and Corey Solman, Jr., M.D., and for their Trial Brief, state as follows:

This is an alleged medical malpractice action brought against defendants Orthopedic and Sports Medicine, Inc. and Corey Solman, Jr., M.D. by plaintiff Leslie Grussing.

The cause of action involves an alleged failure to diagnose a knee infection following an arthroscopic surgery which took place at Des Peres Hospital on October 26, 2014. Essentially, the allegations of negligence are that Dr. Solman breached the standard of care by failing to diagnose a post-operative infection by culturing synovial fluid drained off the knee during one of his follow-up visits with this patient.

By way of background, this surgery took place on October 26, 2014. Antibiotics were given intraoperatively to prevent infection and the surgery had no complications. Ms. Grussing was discharged home the same day with instructions to follow-up in Dr. Solman's office.

Ms. Grussing was seen by Jason Gay, Dr. Solman's physician assistant, on July 9, 2014. Based on all of the documentation in the medical record and Mr. Gay's recollection of the visit,

Ms. Grussing was doing as would be expected two weeks after surgery as there was only mild swelling, reasonable range of motion, and it was specifically noted that Ms. Grussing was walking without the use of any assistive devices. According to Mr. Gay's deposition testimony, he always looks to see if a patient is using an assistive device and it is something he makes a point of documenting in the record. He gave the patient a prescription for physical therapy and asked her to come back in one month.

Ms. Grussing returned to Dr. Solman's office on July 18, 2014. At that visit, she reported she had had a new onset of increased swelling since the last visit, had severe pain, and was unable to walk. In order to help with the swelling, Dr. Solman aspirated the knee and drew off "approximately 60 cc's of slightly bloody synovial fluid without any signs of infection." As the fluid had a non-infectious appearance and Ms. Grussing was not complaining of any other symptoms suggestive of an infection, such as fevers, chills, malaise, or flu-like symptoms, Dr. Solman attributed the swelling to an increase in use after surgery and the patient beginning physical therapy.

According to Dr. Solman, it is very common for patients to start feeling better a couple of weeks after surgery, start being much more active on their knee and develop swelling due to overuse. While he considered infection within his differential diagnosis, post-operative swelling can be considered by numerous reasons such as trauma, synovitis, or overuse. Given the fact Ms. Grussing did not have any other symptoms suggesting an infection, he felt that infection was unlikely.

Our retained expert, Dr. Matthew Matava of Washington University, is in agreement with Dr. Solman's decision not to culture the fluid as he testified it is extremely common for knees to be swollen after surgery absent any infection.

Dr. Solman strongly feels that he acted within the standard of care. We also intend to dispute the issues of causation and damages. Throughout the case, there has been testimony that if there was a "late developing" infection in a prosthetic joint, the standard treatment is to remove the entire implant and place an antibiotic spacer to allow for the infection to be treated. The standard thinking is that any time after three weeks post-operatively, this is the appropriate treatment.

Thus, by the time Ms. Grussing had her July 18, 2014 visit with Dr. Solman, they were already outside the three week period of time where a simple washout would be appropriate. Dr. Solman testified that given the fact the patient already had a partial prosthesis in place and one could not be entirely certain when the infection started, he very well may have decided to simply remove the entire implant at that time.

The issue of damages is also in dispute. There is no dispute that even with a partial knee replacement, Ms. Grussing likely would have needed one or possibly two revisions over the course of her lifetime. According to Dr. Matava, it is quite common for partial knee replacements to progress to total knee replacements and there is no dispute that Ms. Grussing would have needed one or two replacements over the course of her lifetime.

Thus, the primary issue in the case is whether or not Dr. Solman was negligent in his post-operative management of the plaintiff. Plaintiff's retained expert will testify that Dr. Solman acted below the standard of care and Dr. Matava and Dr. Solman will testify that Dr. Solman was not below the standard of care or negligent. It is anticipated that the retained expert witness and Dr. Solman will address the issues of causation; namely, whether an earlier diagnosis of a post-operative infection would have required less extensive treatment and whether plaintiff would have had a better prognosis.

Defendants do not anticipate any complicated legal issues.  Under Missouri substantive law, in the event of a plaintiff's verdict, future damages exceeding $100,000 shall be paid in periodic payments.  R.S.Mo. 538.220.

*[Signature]*
David P. Ellington       #36109MO
Halle L. Dimar            #59004MO
BROWN & JAMES, P.C.
800 Market Street, Suite 1100
St. Louis, Missouri  63101-2501
(314) 421-3400
(314) 421-3128 – Fax
dellington@bjpc.com
hdimar@bjpc.com

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system on this 10th day of January, 2017 to: Mr. Todd N. Hendrickson, Law Offices of Todd N. Hendrickson, 911 Washington Avenue, Suite 400, St. Louis, MO  63101 *(Attorney for Plaintiff)*.

*[Signature]*

HLD:jdl
13384567