# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| LESLIE GRUSSING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15-CV-1333 CAS |
| | ) | |
| ORTHOPEDIC AND SPORTS MEDICINE, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This closed diversity case is before the Court on plaintiff Leslie Grussing's Motion for New Trial pursuant to Rule 59(a)(1)(A), Federal Rules of Civil Procedure. Defendants oppose the motion and it is fully briefed. For the following reasons, the motion will be denied.

## I. Background

Plaintiff's complaint alleged that defendants Dr. Corey Solman, Jr. and Orthopedic and Sports Medicine, Inc. (collectively referred to as "defendants") committed medical malpractice by failing to diagnose and treat an infection in her knee following arthroscopic surgery, specifically by failing to test fluid aspirated from her knee on July 18, 2014. As a result of the infection, plaintiff subsequently had to undergo further surgical treatment including total knee replacement.

The case was tried before a jury on January 30, 2017 through February 3, 2017, when the jury returned a verdict in favor of defendants. Plaintiff timely filed her motion for new trial, which asserts that the Court erred by (1) not sustaining plaintiff's objection to defense counsel's misstatement of the burden of proof in closing argument; (2) allowing defense expert witness Dr. Matthew Matava to testify in violation of Rule 26, Fed. R. Civ. P., as to opinions not previously disclosed and bases for opinions not previously disclosed; and (3) halting plaintiff's cross-

examination of Dr. Matava on the issue of whether normal-appearing synovial fluid can be infected.[1]

Plaintiff also asserts that even if no single individual error warrants a new trial, the cumulative effect

of the errors was prejudicial and affected the jury's verdict.

## II. Legal Standard

"'[T]he granting or denial of a new trial is a matter of procedure governed by federal law.'

Bank of Am., N.A. v. J.B. Hanna, LLC, 766 F.3d 841, 851 (8th Cir. 2014) (alteration in original)

(quoting Brown v. Royalty, 535 F.2d 1024, 1027 (8th Cir. 1976))." Lincoln Composites, Inc. v.

Firetrace USA, LLC, 835 F.3d 453, 459 (8th Cir. 2016). It is almost entirely within the discretion

of the trial court whether to grant a new trial. See Fed. R. Civ. P. 59(a); Belk v. City of Eldon, 228

F.3d 872, 878 (8th Cir. 2000).

"A new trial is appropriate when the first trial, through a verdict against the weight of the

evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice."

Gray v. Bicknell, 86 F.3d 1472, 1480 (8th Cir. 1996). The key question is whether a new trial is

required in order to avoid a miscarriage of justice. Maxfield v. Cintas Corp., No. 2, 563 F.3d 691,

694 (8th Cir. 2009). "[A] new trial is only an appropriate remedy when an aggrieved party proves

prejudice, meaning that the result at trial would have been different if not for the district court's

error." Acuity v. Johnson, 776 F.3d 588, 596 (8th Cir. 2015) (citations omitted).

## III. Discussion

### A. Defense Counsel's Closing Argument on the Burden of Proof

Plaintiff's first point in support of her new trial motion is that the Court erred in not

sustaining plaintiff's objection to defense counsel's misstatement of the burden of proof in closing

---

[1]Synovial fluid is a "viscous fluid contained within a membrane enclosing moveable joints such as the elbow and knee." Collins Dictionary of Biology, 3rd ed (W.G. Hale, V.A. Saunders, J.P. Margham 2005).

argument. The defense argument at issue, plaintiff's objection, and the subsequent discussion is as

follows:

> MR. ELLINGTON [defendants' counsel]: I want to discuss briefly just a few
> instructions. One of those is the burden of proof. The plaintiff has the burden of
> proof in this case. As indicated a minute ago, I believe the evidence supports a
> verdict for Dr. Solman. And we don't have an obligation under the law to prove
> anything. I don't believe plaintiff has met their burden. I think – but if you are just
> sitting there **and you are not sure, then the law requires that you find in favor of
> the defendants**.

> A few other instructions. One of them.

> MR. HENDRICKSON [plaintiff's counsel]: Objection, Your Honor, this is
> a misstatement of the law, "not sure."

> THE COURT: Counsel.

> MR. ELLINGTON: Your Honor --

> THE COURT: Follow the instructions.

> MR. ELLINGTON: Yes. And the Court will give you the burden of proof, what that
> is. More likely than not.

> THE COURT: Well, it's in the instruction.

> MR. ELLINGTON: Yes, Your Honor.

> THE COURT: Yes.

Tr. of Defs.' Closing Arg., Pl.'s Ex. 1, 3:1-19 (emphasis added) (Doc. 113).[2]

Plaintiff asserts that the Court did not sustain the objection to defense counsel's argument

but rather merely admonished the jury to follow the instructions, and thus allowed a misstatement

of the burden of proof to stand. Plaintiff argues that under Missouri law, such a misstatement of the

law is prejudicial and requires a new trial, offering citation to Missouri decisions.

---

[2]Plaintiff requested the Official Court Reporter to prepare excerpts of specific portions of the
trial transcript – defendants' closing argument and the testimony of defendants' expert witness Dr.
Matava – and submitted these in support of her Motion for New Trial. The excerpts have been made
part of the electronic case file.

Defendants respond, correctly, that federal law governs the permissible scope of closing

argument in a diversity case.  Kostelec v. State Farm Fire & Cas. Co., 64 F.3d 1220, 1228 (8th Cir.

1995) (citing cases); Vanskike v. Union Pacific R. Co., 725 F.2d 1146, 1149 (8th Cir. 1984).[3]  Under

federal law, no error results from closing argument unless the statements made were plainly

unwarranted and clearly injurious.  Vanskike, 725 F.2d at 1149.  In determining whether plaintiff

has made the requisite showing of prejudice arising from defense counsel's statement in closing

argument, the Court must examine the entire trial.  Gilster v. Primebank, 747 F.3d 1007, 1011 (8th

Cir. 2014).[4]

In this case, there was significant discussion of the plaintiff's burden of proof during jury

selection.  Plaintiff's counsel introduced the topic of the burden of proof and told the venire panel

that plaintiff had to prove "we are more likely right than wrong . . . .  Just a slight tip of the scales."

Tr. of Pl.'s Voir Dire, 2:20-23 (Doc. 115).  Plaintiff's counsel emphasized the "more likely than not"

---

[3]A conflict exists in Eighth Circuit precedent as to whether federal or state law governs the permissible scope of parties' closing arguments in diversity cases.  See Kostelec v. State Farm Fire and Cas. Co., 64 F.3d 1220, 1228, n.8 (8th Cir. 1995) (applying federal law); cf. Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (applying state law).  Although the Eighth Circuit en banc has not reconciled the conflict, it instructed in Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011), that "when faced with conflicting panel opinions, the earliest opinion must be followed as it should have controlled the subsequent panels that created the conflict.") (internal citation and quotation marks omitted).  The earliest Eighth Circuit opinion to address the question held that federal law governs the issue of closing argument in a diversity case.  See Illinois Central R.R. Co. v. Staples, 272 F.2d 829, 834 (8th Cir. 1959).  This principle was well established by the time Smith was decided in 1996.  See, e.g., Duncan v. St. Louis–San Francisco Ry. Co., 480 F.2d 79, 84 (8th Cir. 1973) (federal law applies); Vanskike v. ACF Indus., Inc., 665 F.2d 188, 209 (8th Cir. 1981) (same).  The Court therefore applies federal law to this issue.

[4]Because the Court must examine the entire trial to determine whether plaintiff has established prejudice from the alleged errors, it directed the Official Court Reporter to prepare an unedited, uncertified rough-draft transcript.  The Court used the unedited draft, in addition to the certified transcript excerpts submitted by plaintiff, to refresh its recollection of the case.  Because the Court found it appropriate to quote parts of plaintiff's voir dire and closing argument, it directed the Court Reporter to prepare certified excerpts of those portions of the transcript, which have been made a part of the electronic case file.  The unedited rough-draft transcript will not be filed in the electronic case file.

standard and contrasted it to the much higher burden of proof in a criminal case. Id., 2:24-3:11.

Several venire members stated they might have difficulty with or disagreed with the applicable

"more likely than not" burden of proof, and questions and discussion on the topic ensued. Id., 3:12-

4:22. One venire person asked plaintiff's counsel, "[W]hen you say slightly tip the scales, are we

talking 51/49 reasonable?" Id., 4:23-25. Plaintiff's counsel stated, "51/49 would do it. And that

is the standard that the law says you have to apply. If you believe you need 60-, 70-, 80-percent

certainty, then you wouldn't be able to follow that standard." Id., 5:1-4. The venire person

responded, "It is less than what I thought, but I did not realize the margin was that narrow."

Plaintiff's counsel replied, "It is. The law says more likely right than wrong." Id., 5:5-8.

Shortly thereafter, the Court informed the venire panel that in a civil case the party who has

the burden of proving a fact must prove it by a preponderance or the greater weight of the evidence,

that is, to prove it is more likely true than not true, and stated that the jury would be given further

instructions on the burden of proof later. Id., 6:2-9. After the jury was selected and the panel was

sworn, the Court read initial instructions to the jury, including an instruction describing the burden

of proof which stated in part that the party with the burden of proof was required to prove a fact by

the greater weight of the evidence, which meant the fact was more likely true than not true.

After the conclusion of all the evidence and immediately before closing arguments, the Court

read the final instructions to the jury. Instruction number five instructed the jury on the burden of

proof and informed the jury that "[t]he burden is upon the party who relies upon any such [factual]

proposition to cause you to believe that such proposition is more likely to be true than not true." See

Doc. 97 at 6, Instr. No. 5. Instruction number six informed the jury, among other things, that

"[l]awyers' statements, arguments, questions, and comments are not evidence." Id. at 7, Instr. No.

6. The Court cautioned jury that they must remember to follow all of the instructions, and stated

that each juror would have a copy of the instructions for use in the jury room. Instruction number

one instructed the jury that they must follow all of the Court's instructions. Id. at 1, Instr. No. 1.

Plaintiff's counsel addressed the issue of the burden of proof in closing argument:

> MR. HENDRICKSON: I have to talk to you now about a couple critical instructions. The first one I want to talk about is number five. That's the burden of proof. We're showing you here. These are the instructions you'll get. This is what we talked about all the way back in jury selection. **If you believe that the overall weight of the evidence is more likely than true that we've shown that Dr. Solman was negligent, just this, then you must find for Leslie**.

> Nothing more is required. You can have doubts –

> MR. ELLINGTON: Your Honor, that's a misstatement of the law, the negligence and the cause -- the instructions indicate that.

> THE COURT: Be aware of that. Go ahead.

Tr. of Pl.'s Closing Arg., 5:16-6:3 (emphasis added) (Doc. 114). In the emphasized portion of this

excerpt, plaintiff's counsel misstated her burden of proof and combined it with an incomplete

description of the elements of negligence as set forth in Instruction number eleven, and/or the

verdict directing instruction, Instruction number twelve.

Subsequently, in defense counsel's closing argument, as quoted more fully above,

defendants' counsel stated,

> I don't believe plaintiff has met their burden. I think – but if you are just sitting there **and you are not sure, then the law requires that you find in favor of the defendants**.

Tr. of Defs.' Closing Arg., 3:6-8.

Upon plaintiff's objection, the Court remonstrated to defendants' counsel to "follow the

instructions." Tr. of Defs.' Closing Arg., 3:14. Defendants' counsel then immediately told the jury

that the Court would instruct it on the burden of proof: more likely than not. Id., 3:15-16. This was

a correct statement of the burden of proof, as contained in the Court's instructions to the jury that

were read immediately prior to closing argument, had been discussed at length in voir dire, and were

included in the written instructions each member of the jury took to the jury room. Plaintiff did not seek any further relief from the Court, such as asking for a ruling on her objection or requesting a further admonition from the Court to instruct the jury to disregard defense counsel's argument. Nor did plaintiff return to the issue of the burden of proof during the rebuttal portion of her closing argument.

The Eighth Circuit has instructed, "When deciding whether to grant a new trial due to improper remarks by counsel, we consider whether: (1) the remarks in question were . . . minor aberrations made in passing; (2) the district court took specific curative action; and (3) the size of the damage award . . . suggest[s] that counsel's comment had a prejudicial effect." Ventura v. Kyle, 825 F.3d 876, 885 (8th Cir. 2016) (internal quotation marks and quoted case omitted). "The weight of the evidence is another relevant factor in determining whether the improper argument deprived a party of a fair trial." Id. at 885 (brackets, internal quotation marks, and quoted case omitted)

Here, as to the first factor, defense counsel's incorrect argument concerning the burden of proof was brief and, when compared to the other and more in-depth discussions of plaintiff's burden of proof that occurred throughout the trial, can be considered a "minor aberration made in passing," not unlike plaintiff's counsel's misstatement of her burden of proof in closing argument.

As to the second factor, although the Court did not specifically rule on plaintiff's objection to the defendants' argument, it immediately took curative action by directing defense counsel to "follow the instructions," and defense counsel then immediately articulated the correct burden of proof to the jury. As stated above, plaintiff did not request a ruling on the objection or further corrective action by the Court, and did not return to the issue of the burden of proof in her rebuttal closing argument.

As to the third and fourth factors, the jury returned a verdict in favor of defendants after deliberating approximately two and a half hours (see Doc. 94, Clerk's Minute Sheet), and after

having sent three notes asking to see specific evidence. The Court having heard all of the evidence presented at trial, and having considered the in-depth discussion of the burden of proof during the voir dire process and the burden of proof instructions read to the jury at the beginning of the case and prior to closing argument, finds plaintiff has not established that the Court's response to defense counsel's brief and quickly corrected misstatement of the burden of proof in closing argument prejudiced her and caused the jury to return a defense verdict. See Acuity, 776 F.3d at 596. This aspect of plaintiff's motion for new trial should therefore be denied.

### B. Defense Expert Dr. Matava's Testimony

Plaintiff's second point in support of her new trial motion is that the Court erred in allowing defense expert witness Dr. Matthew Matava to testify in violation of Rule 26, Fed. R. Civ. P., as to opinions not previously disclosed and bases for opinions not previously disclosed. Specifically, plaintiff states that during cross-examination, Dr. Matava offered a new opinion that blood tests showed plaintiff was not infected as of October 16, 2014, a date after the last date on which defendants provided care to plaintiff. Plaintiff asserts that Dr. Matava's opinion was non-responsive to the question asked, and contends that the Court erred when it overruled plaintiff's objection to the opinion on the basis that plaintiff's counsel had opened the door with his question.

Defendants respond that this point should be denied because plaintiff's sole objection at trial was that Dr. Matava's answer referred to records he had not previously disclosed having reviewed. Defendants state that plaintiff's new trial motion raises a different objection not urged at trial: that the records were not previously disclosed under Rule 26. Defendants assert that a party cannot rely on a ground never urged at trial in support of a claim for reversible error, citing Mutual Benefit Health & Accident Ass'n v. Francis, 148 F.2d 590, 598 (8th Cir. 1945). Defendants further state that the records were in fact disclosed by Dr. Matava's Rule 26 report.

The questions and answers at issue are as follows:

8

Q. (By Mr. Hendrickson) Well, if the constitutional signs and symptoms of infection are what you're looking for to tell us when the infection started, where in the record do those exist before October 30th? They don't even exist on October 30th. Dr. Tull doesn't even have constitutional signs and symptoms on October 30th, does he?

A. [By Dr. Matava] No. But the –

Q. And yet he pulled fluid and there was an infection.

A. Yes. But if you -- again, in formulating my opinion using all the information, **if you also look prior to his evaluation, she had a completely normal sedimentation rate and a normal C-reactive protein, which you will probably discuss. So if on your premise she was infected at the time of the arthroscopy on June 26th, why her C-reactive protein would be normal and her sed rate would be normal, these are markers for infection, they were completely normal**.

MR. HENDRICKSON: <u>Objection, Your Honor. He's referring to records that he hadn't previously disclosed having reviewed</u>.

MR. ELLINGTON: He absolutely --

THE COURT: Hold on.

MR. ELLINGTON: Those are the DePaul records. He has asked him about this.

THE COURT: Fine. You asked the question. You opened the door. Wait a minute. Are you through with this witness? You seem to be retreading the same ground.

MR. HENDRICKSON: No, I'm not trying to tread the same ground, Your Honor.

THE COURT: You are treading the same ground. When and what. I mean, it's the same thing. Let's move to something different.

MR. HENDRICKSON: All right.

Tr. of Matthew Matava, M.D. Testimony, Pl.'s Ex. 2, 63:19-64:25 (Doc. 117). After the Court's

ruling, plaintiff's counsel did not ask the Court to reconsider its ruling or for any further relief, such

as to strike Dr. Matava's response as nonresponsive or to instruct the jury to disregard it.

The transcript shows plaintiff did not object to Dr. Matava's response on the basis that it violated Rule 26 as an opinion not previously disclosed or as a basis for an opinion not previously disclosed, as she urges in her new trial motion. Plaintiff objected to the response solely on the basis that Dr. Matava was referring to records he had not previously disclosed having reviewed. Plaintiff cannot seek a new trial on the basis of Court error in failing to sustain an objection that was not made, or in failing to anticipate what another objection to the testimony might have been. See United States v. Thornberg, 844 F.2d 573, 575 (8th Cir. 1988); Mutual Benefit, 148 F.2d at 598-99.

Moreover, plaintiff's objection that Dr. Matava's response was based on reference to records he had not previously disclosed having reviewed lacks a basis in fact. The records concerning plaintiff's sedimentation rate and C-reactive protein ("CRP") blood tests were part of her medical records from Dr. Garriga/DePaul Hospital (Defs.' Trial Ex. K). Dr. Matava's Rule 26 report states that the facts he considered in forming his opinions included medical records from DePaul Hospital. Pl.'s Ex. 3 at 1. Dr. Matava's report also states that on October 16, 2014, plaintiff "was seen by Francisco Garriga, M.D., a rheumatologist. He ordered serological tests to rule out a rheumatologic condition." Id. at 4.

At Dr. Matava's deposition, plaintiff's counsel asked the witness whether Dr. Garriga's records showed a clinical manifestation of plaintiff's infection. Pl.'s Ex 4 at 24 (Matava Dep. 93:7-10). Plaintiff's counsel then asked Dr. Matava, "Under what circumstances would you – clinical circumstances with a prosthetic knee implant would you consider getting a CRP level of a patient to rule in or out infection?" Id. (Matava Dep. 95:25-96:12). Plaintiff's objection at trial that Dr. Matava had not previously disclosed having reviewed records concerning plaintiff's sedimentation rate and C-reactive protein blood tests was therefore without merit.[5]

_____

[5]In further support of her second point, plaintiff states that during direct examination of Dr. Matava by defendants' counsel, the Court sustained her objection to the question, "Have you seen

Plaintiff's counsel opened the door to Dr. Matava's testimony concerning plaintiff's CRP tests when he inquired of Dr. Matava as to whether plaintiff had any constitutional signs or symptoms of infection in the record before October 30. In response, Dr. Matava discussed plaintiff's normal CRP results, referring to her previously disclosed medical records from Dr. Garriga/DePaul Hospital. Where a party claiming error "opened the door" and "invited error" there is no basis for a new trial. See, e.g., United States v. Grandison, 781 F.3d 987, 991 (8th Cir. 2015) (testimony brought out on cross-examination by defendant's counsel could not be a basis for reversal, as defendant opened the door through her questioning and invited error).[6]

Under these circumstances, plaintiff does not establish that she is entitled to a new trial on her second point.

C. Plaintiff's Cross-Examination of Dr. Matava

Plaintiff's third point in support of her new trial motion is that the Court erred in sustaining an objection to her cross-examination of defendants' expert Dr. Matava on the issue of whether normal-appearing synovial fluid can be infected. The following questioning is at issue on this point:

---

the records of Dr. Tull and Dr. Garriga?" Mr. Hendrickson had objected, "It has not been listed on [Dr. Matava's] report. It has never been disclosed as something he has relied upon." Tr. of Matava Testimony, 17:7-10. Defendants' counsel Mr. Ellington responded, "I thought he had received Dr. Garriga's reports when he gave his deposition." Id., 17:15-16. Given this equivocal response, the Court credited Mr. Hendrickson's representation and defendants' counsel agreed not to refer to the records. Based on the Court's review of Dr. Matava's Rule 26 report and deposition testimony, it now is clear Mr. Hendrickson's trial objection was without factual foundation and misled the Court into erroneously sustaining the objection. Plaintiff cannot rely on this to support her motion for new trial.

[6]In addition, after plaintiff's objection was overruled, plaintiff's counsel directly questioned Dr. Matava on re-cross examination about the blood tests (Matava Dep. 73:7-21), and did not object when defense counsel questioned the witness on re-direct concerning plaintiff's CRP test and sedimentation rate. (Id., 71:7-20.) Nor did plaintiff object when defendants in their closing argument addressed plaintiff's CRP test and Dr. Matava's testimony concerning it. Tr. of Defs.' Closing Arg. 17:17-25 (Doc. 113).

Q. [Mr. Hendrickson]  Okay.  Did he (Dr. Solman) actually rule out infection by any means other than looking at the fluid?

A. [Dr. Matava]  He looked at the fluid, he took the context of the patient's history or lack thereof in ruling out an infection.

Q.  And again, that's relying on his history, not anybody else's?

MR. ELLINGTON:  Your Honor, objection.  Repetitious.

THE COURT:  Mr. Hendrickson, you keep going back to what and when on this fluid.  You need to quit it and move on.  You know, I mean . . . Please.

Q. (By Mr. Hendrickson)  Can perfectly normal looking synovial fluid be infected?

MR. ELLINGTON:  Your Honor, that is repetitious as well.

THE COURT:  Sustained.

MR. HENDRICKSON:  I have not asked that question before, Your Honor.

THE COURT:  Well, you're not going to ask it now.  Move on from this. No, move on.

MR. HENDRICKSON:  Your Honor, that's the core of the case.

THE COURT:  Listen, you have gone over this enough.

Tr. of Matava Testimony, 66:8-67:4 (Doc. 117).

Plaintiff asserts that the Court's ruling was in error because Dr. Matava had not been asked the question in any form, and therefore the question was not repetitious even though other questions had been asked related to the fluid.  Plaintiff also asserts that the question was highly relevant as it went to the core issue in the case as submitted in the verdict director: whether the fluid should have been tested despite its allegedly normal appearance.  Plaintiff states that the Court's direction to "move on" left her "unable to pursue the matter in order to clarify the significance for the Court." Mem. Supp. Mot. New Trial at 13.

Defendants respond that the Court was within the exercise of its broad discretion in limiting cross-examination, particularly as the proposition that a physician cannot rule out an infection based on the presence of normal-appearing and perfectly clear synovial fluid was not a new issue first introduced by plaintiff's counsel during Dr. Matava's cross examination. Defendants assert that they admitted this very proposition when defendant Dr. Solman testified without equivocation that infection cannot be ruled out based on the presence of normal-appearing synovial fluid. Therefore, defendants contend that the subject matter was repetitious, and concerned a proposition that was not in dispute. Finally, defendants argue that plaintiff's third point fails because she made no offer of proof as to what Dr. Matava's testimony would have been had she been permitted to continue her cross-examination on this point, as "no claim of error related to the exclusion of evidence may be advanced unless the claiming party informs the court of its substance by an offer of proof." Defs.' Sugg. Opp. at 11 (citing Fed. R. Evid. 103(a)(2)).

A trial court is granted "broad discretion in regulating cross-examination of witnesses[.]" Cisar v. Home Depot U.S.A., Inc., 351 F.3d 800, 803 (8th Cir. 2003). The Court "may exercise a reasonable judgment in determining when [a] subject is exhausted." McGraw-Edison Co. v. Central Transformer Corp., 308 F.2d 70, 75 (8th Cir. 1962) (quoted case omitted). Here, defendant Dr. Solman had previously testified and admitted the proposition that a physician cannot rule out infection based on the presence of clear synovial fluid, before the Court restricted plaintiff's cross-examination of defendants' expert witness Dr. Matava. Under these circumstances, plaintiff fails to establish that the Court's limitation of cross-examination prejudiced her and caused the jury to return a defense verdict. See Acuity, 776 F.3d at 596.

In addition, plaintiff failed to make an offer of proof to preserve the alleged error. "Error may not be predicated upon a ruling excluding evidence unless a substantial right of the party is affected and 'the substance of the evidence was made known to the court by offer [of proof] or was

13

apparent from the context within which questions were asked.'"  Strong v. Mercantile Trust Co., N.A., 816 F.2d 419, 431 (8th Cir. 1987).  Here, plaintiff has not established that her substantial rights were affected by the Court's ruling, and after the Court limited cross-examination plaintiff did not attempt to make an offer of proof or otherwise apprise the Court how Dr. Matava's response would have been anything other than cumulative of evidence already presented.  Plaintiff's third point in support of her motion for new trial should therefore be denied.

        D.  Cumulative Error

Plaintiff also moves for a new trial on the basis that the errors she has alleged warrant a new trial when considered cumulatively.  Eighth Circuit has stated it "will not reverse based upon the cumulative effect of errors unless there is substantial prejudice" established, and has "declined to apply the doctrine when the evidentiary rulings are within the trial court's discretion."  McPheeters v. Black & Veatch Corp., 427 F.3d 1095, 1106 (8th Cir. 2005) (quoted case omitted).  Here, the Court finds no evidence that the errors plaintiff complains of substantially influenced the verdict, either individually or cumulatively.  This aspect of plaintiff's motion for new trial should therefore be denied.

## IV.  Conclusion

For the foregoing reasons, the Court will deny plaintiff's motion for new trial in all respects.

## V.  Bill of Costs

The Judgment issued in this case on February 3, 2017 assessed costs against plaintiff.  See Fed. R. Civ. P. 54(d)(1).  Defendants timely filed a verified Bill of Costs on February 22, 2017, seeking costs for fees for printed or electronically recorded transcripts necessarily obtained for use in the case in the amount of $2,806.10.  See E.D. Mo. L. R. 8.03(A)(1); 28 U.S.C. § 1920(2).  Defendants' Bill of Costs is supported by documentation.  Plaintiff did not file objections to the Bill

of Costs and the time to do so has passed.  <u>See</u> E.D. Mo. L.R. 8.03(A)(3).  The Clerk of the Court will therefore be directed to tax costs in favor of defendants.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's Motion for New Trial is **DENIED**.  [Doc. 103]

**IT IS FURTHER ORDERED** that the Clerk of the Court shall tax costs in favor of defendants and against plaintiff in the amount of Two Thousand Eight Hundred Six Dollars and Ten Cents ($2,806.10), as reflected in the Bill of Costs.  [Doc. 102]


_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this  1st  day of May, 2017.